Long v. Nute.

---

LONG, Respondent, v. NUTE, Appellant.

St. Louis Court of Appeals, February 19, 1907.

1. **MASTER AND SERVANT: Tort of Servant: Scope of Agency.** In an action against the master for damages caused by the negligence of the servant in driving the vehicle of his master, it was necessary to show that the servant was engaged in his master's business at the time, and not merely driving the vehicle for his own purposes.

2. ———: ———: ———. Where a chauffeur took his employer's automobile out of the garage by the order of his employer's wife and while taking it to her, negligently collided with another vehicle, this is sufficient to raise the presumption that he was about his master's business so as to render the latter liable for the damage caused, although he was making a detour instead of going directly to the place where he was ordered to take it, there being no evidence to show that he was using the automobile for his own ends.

3. **PRACTICE: Instruction: Omission of Instruction.** Where the instructions to the jury correctly declare the law so far as they go, a party cannot be heard to complain that a necessary instruction upon an issue was omitted when he failed to ask such an instruction.

4. ————: **Justice of the Peace: Pleading.** In an action begun before a justice of the peace, where the complaint contained a general allegation of damage caused by the negligence of the defendant, this was sufficient to let in evidence as to particular damages received.

Appeal from St. Louis City Circuit Court. — *Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*Jones, Jones & Hocker* for appellant.

(1) It is error for the court to instruct the jury that any fact may be presumed from another fact unless the presumption be one of law. Glovers' Admr's v. Duhle, 19 Mo. 360; Moies v. Eddy, 28 Mo. 382; Steinwender v. Creath, 44 Mo. App. 356. (2) There is no presumption of law with respect to the servant acting in the service of the master, when he is driving a pleasure vehicle like an automobile, when no member of the owner's family is therein. Railroad v. Harvey, 144 Fed. 806; Cousins v. Railroad, 66 Mo. 576; Garretzen v. Duenckel, 50 Mo. 107.

*R. E. Rombauer* for respondent.

BLAND, P. J.—The action was commenced before a justice of the peace and in due course was appealed to the circuit court, where on a trial *de novo* plaintiff recovered a judgment for eighty-five dollars, from which defendant duly appealed. During the trial, to meet the views of the trial court in regard to the admissibility of evidence, as to the value of the services of a veterinary surgeon, employed by plaintiff to treat the wounds inflicted upon his horse, the complaint, by leave of court,

was amended so as to read as follows (omitting caption) :

"Plaintiff states that the defendant, by his servant and agent, while in the course of defendant's employment, on or about the fifteenth day of October, 1904, in the city of St. Luis, so negligently managed his, the defendant's automobile, that the same ran into the plaintiff's vehicle and horse, and injuring all of them, causing damages to plaintiff in the sum of $150, for which sum and costs plaintiff asks judgment against the defendant."

The facts as shown by the abstract are substantially as follows: On October 15, 1904, about five o'clock in the afternoon. plaintiff's two daughters and a lady friend were driving plaintiff's horse (hitched to a trap) in a slow trot, south on the west side of Newstead avenue, in the city of St. Louis. When the trap was within fifty feet of the intersection of Newstead and Washington avenues, one of plaintiff's daughters (not the driver) noticed an automobile, running at a speed of from twenty to twenty-five miles an hour, approaching on Washington avenue west, and a coal wagon going north on Newstead avenue. The chauffeur driving the automobile, in making a circuit to get around and ahead of the coal wagon, drove in between the wagon and the trap but did not make the circuit sharp enough, in consequence of which the automobile struck plaintiff's horse on the left shoulder with such force as to turn him around and cut a gash seven or eight inches long in his shoulder.

An ordinance of the city, limiting the speed of automobiles to eight miles per hour, was read in evidence. The chauffeur was subject to the orders of defendant and his wife, and the evidence shows that he had been ordered by Mrs. Nute to call for her at the World's Fair Grounds on that day at about six o'clock p. m., and that he called for her and she returned to her home in the automobile.

Defendant's evidence tends to show that the automobile was not on the route from his home, or the garage where the automobile was kept, to the Fair Grounds when it collided with plaintiff's horse. The chauffeur stopped the automobile and gave the name and address of the owner to the young lady who was driving the trap. On the following morning, plaintiff called at defendant's home for the purpose of adjusting the matter. As soon as defendant saw plaintiff, and before plaintiff said anything about the collision, defendant addressed him thus: "Mr. Long, I have both hands up and I want to settle as soon as possible." Nothing came of the effort to settle the matter.

As to the damages, plaintiff's evidence tends to show the value of the horse before he was injured was one hundred dollars and not more than eighteen dollars after the injury; that he paid twenty dollars to a veterinary surgeon for treating the horse and the charge was a very reasonable one; that the horse was disabled for several months and his services were reasonably worth one dollar and a half a day. Defendant's evidence tends to show that the horse was fourteen or fifteen years old, that he was ill-shaped, ragged and not worth more than twenty-five dollars before he was injured and his value was not depreciated by reason of the injury.

The chauffeur was not in the State at the time of the trial. His deposition was not taken though the evidence shows defendant had ample time to have taken it before the trial.

1. The court gave the following instructions for plaintiff:

"1. The court instructs the jury that if you find from the evidence that on or about October 15, 1904, a collision took place between an automobile and a horse, and that it was owned by plaintiff, and that such automobile was then owned by the defendant, and was in charge of the defendant's servant and chauffeur, you are

authorized to infer from the facts thus found that said servant and chauffeur was at the time engaged in defendant's business and acting within the scope of his employment.

"2.    The court instructs the jury that if you find for plaintiff you may, in estimating plaintiff's damages, take into consideration the depreciation if any, in the value of the plaintiff's horse, as the natural result of the collision, the value of the use of the horse while disabled, and the amount necessarily expended by plaintiff in an endeavor to heal the injuries inflicted on the horse, and award him damages accordingly not to exceed, however, in the aggregate, the sum of one hundred and fifty dollars. The depreciation above referred to would be the lessening in value, if any, of the horse as it was just before the collision and after the cure was effected, provided such lessening, if any, in value was the direct result of the collision."

Defendant contends that instruction No. 1 is misleading and also erroneous, in that it told the jury that on evidence that the automobile belonged to defendant, and the chauffeur was in his employ, they might infer that at the time of the collision the chauffeur was about defendant's business and acting within the scope of his authority. As the master is not liable for the tortious act of his servant, if the act was done while the servant was at liberty from his service and was pursuing his own ends exclusively (Garretzen v. Duenckel, 50 Mo. 107; Cousins v. Railroad, 66 Mo. 576), it was essential to plaintiff's right of recovery that it should be shown the chauffeur was about his master's business at the time of the collision. May this fact be presumed from evidence showing that the chauffeur who committed the tortious act was at the time operating a vehicle he was hired by defendant specially to run? Defendant cites the case of St. Louis Southwestern Ry. Co. v. Harvy, 144 Fed. 806, as holding the inference cannot be drawn.

The case decides that the fact that servants guilty of a tortious act make use of the master's cars, engines or other facilities, which they could not have obtained in the absence of the relation of master and servant, to commit it, while pursuing their own ends exclusively, does not charge the master with liability for their act, in the absence of his knowledge or consent to such use, and that the mere fact that the handcar, which caused the accident, was in use by servants, was not sufficient to overcome the evidence tending to show the servants got possession of the car surreptitiously and were using it for their own purposes. The case does not support defendant's contention. As a general proposition, "the law presumes that every one, even though not an official, performs his engagements and duties, social as well as business" (McCallister v. Ross, 155 Mo. 1. c. 94, 55 S. W. 1027, and cases cited). Defendant's evidence is that the chauffeur had orders not to take the automobile out of the garage except on the order of himself or his wife. The chauffeur had the automobile out of the garage, and the presumption is, that he was ordered to take it out, in fact, defendant's wife testified she ordered him to come for her with the automobile; again, if the chauffeur was using the automobile surreptitiously, the fact that he was so using it was peculiarly within the knowledge of defendant, or both. No effort was made to procure the evidence of the chauffeur and defendant did not testify that the chauffeur was using the automobile without authority. The failure of defendant to testify that the chauffeur was using the automobile for his own ends and without authority, and his failure to procure the evidence of the chauffeur, raises the presumption that the latter was about the master's business at the time of the accident and was in possession of the automobile by his consent. [Baldwin v. Whitcomb, 71 Mo. 651.] Where a servant, who is em-

ployed for the special purpose of operating an automobile for the master, is found operating it in the usual manner such machines are operated, the presumption naturally arises that he is running the machine in the master's service. If he is not so running it, this fact is peculiarly within the knowledge of the master, and the burden is on him to overthrow this presumption by evidence which the law presumes he is in possession of. It would be a hard rule, in such circumstances, to require the party complaining of the tortious acts of the servant, to show by positive proof that the servant was serving the master and not himself, and the fact that the chauffeur made a detour from the direct route from defendant's home to the Fair Grounds, does not change the presumption or relieve the master's liability for injuries caused by careless driving. [20 Am. and Eng. Ency. of Law, p. 166.] We think the instruction was a proper one in the circumstances shown by the evidence.

2.   Defendant contends that the second instruction on the measure of damages is erroneous. The chief argument against the correctness of the instruction is based on the fact that no instruction was asked by either party, telling the jury that it was necessary for them to find that the collision resulted from the negligence of defendant, to authorize them to find a verdict for plaintiff. That no such instruction was asked or given is not complained of, but it is insisted that by reason of its omission, the instruction on the measure of damages should have been so framed as to require the jury to find that the collision was the result of negligence to authorize them to assess any damages. It seems to us that defendant is in no position to insist on this contention. He had the opportunity in the circuit court to ask for an instruction to the effect that to entitle plaintiff to recover and to damages, negligence and the collision must have concurred to cause the injury. Having failed to ask for what he was entitled to on the trial he ought not to complain that

plaintiff did not incorporate the omitted instruction in an instruction on the measure of damages where it did not belong, and where if it had been incorporated it would have confused the jury by confounding the main issue with the measure of damages.

It is also contended that the instruction is erroneous for the reason the jury were authorized to assess as damages the amount necessarily expended by plaintiff in endeavoring to heal the injuries inflicted upon his horse, and the value of his services while disabled. If the action had been commenced in the circuit court, defendant's contention would have some weight, as the rules of good pleading require a special mention of these two items of damages, but no such strictness is required in a complaint before a justice of the peace, where under a general allegation of damages the plaintiff may prove and recover not only the damages that naturally flow from the injury complained of, but such additional damages as are ordinarily incident to the injury, as medical attendance and loss of time.

3. Exceptions to leave to amend the complaint and exceptions to the admission of evidence were saved by defendant at the trial, but as none of these are mentioned in defendant's brief, we will take no notice of them.

No reversible errors appearing the judgment is affirmed. All concur. *Goode, J.,* in result.